**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

ISAIAH HALL

          **Defendant.**

Case No. 25-mj-59

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF
PRETRIAL DETENTION OF DEFENDANT ISAIAH HALL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that the defendant Isaiah Hall be detained pending trial of this matter pursuant to 18 U.S.C. §§ 3142(e)(3)(E) (rebuttable presumption in favor of detention), 3142(f)(1)(A) (crime of violence), and 3142(f)(2)(A) (serious risk of flight), of the federal bail statute because there is no condition or combination of conditions that will reasonably assure the appearance of the defendant or the safety of any person or the community .

On April 9, 2025, Isaiah Hall ("Defendant"), was charged in a single count Criminal Complaint with Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), for an offense occurring on February 27, 2025. Subject to a rebuttal by Defendant, this case carries a <u>presumption</u> that <u>no</u> condition or combination of conditions of bond will reasonably assure the safety of the community nor the appearance of Defendant in court.[1]

---

[1] 18 U.S.C. § 3142(e)(3)(E).

1

Defendant's initial appearance was held on April 10, 2025, and his pretrial detention hearing is currently scheduled for Monday, April 14, 2025. The Government proffers the following facts in support of its request, in addition to the bond report prepared by probation.

**Factual Background**

1.     On March 18, 2025, a search warrant was authorized by Magistrate Judge G. Michael Harvey of this Court to search and seize information and devices from the Defendant's person and residence in Washington, D.C. (25-sw-68). On March 19, 2025, law enforcement agents intercepted the Defendant in Washington D.C. and recovered a cellular telephone from his person.  On the same day, the agents recovered a laptop computer from the Defendant's residence, which was used by the Defendant.

2.     An on-scene preview of the Defendant's cellular phone revealed sexually explicit images and videos of what appeared to be minor (teenage) females. One video found in the "deleted" files folder of the Defendant's phone depicted a fully nude female exposing her vagina to the camera and masturbating her vagina with her hand. The female's face was also visible in the video. Investigators were not able to access the sound in the video, however it appeared the female was talking during the video. The video appeared to be a recording of a Google Meet video call based on the icons depicted on the screen recording. The name "LXXX"[2] appeared below the frame of the video. Metadata from the Defendant's phone revealed that the Google Meet video call that included the above-referenced video was "created on" the Defendant's phone on February 27, 2025, at 12:12:23 UTC.

3.     Following the search warrant execution, the Defendant agreed to a voluntary interview.  In the interview, the Defendant stated that he had received the video from a 17-year-old

---

[2] This name has been anonymized to protect the victim's identity.

girl that he knew by the name "LXXX." Further investigation revealed that the girl in the video was not 17 years old. Rather, investigation confirmed that the female depicted in the video was a 14-year-old girl (here in Minor Victim 1 or "MV-1") "with whom the Defendant had been communicating on-line.

4.      Review of the Defendant's phone showed that the Defendant, using the Gmail address iloveXXXX@gmail.com,[3] had communicated with Gmail address stXXXX@gmail.com via G-chats, e-mail, and Google Meet. For example, on January 21, 2025, stXXXX@gmail.com sent an email to the Defendant with the subject line "ill stay in call waiting for u." The Defendant's phone showed multiple Google Meet calls occurred between the Defendant (using email address iloveXXXX@gmail.com) and stXXXX@gmail.com, around the time that the CSAM video found on the Defendant's phone was created.

5.      In addition to the CSAM video depicting MV-1, there was another video found in the Defendant's phone that depicted a minor teenage girl standing topless in what appeared to be her bedroom, talking to someone on a live chat while she poured bleach on her arm and set her arm on fire. During his voluntary interview with the FBI on March 19, 2025, the defendant identified the girl by her first name. The Defendant further explained that the girl was setting herself on-fire at the direction of one of his on-line associates who goes by the nickname "Kills."

6.      Further review of the Defendant's phone revealed that on 3/18/25, the Defendant was communicating on an encrypted messaging platform using the moniker "Nox" and was speaking with

---

[3] An administrative subpoena was sent to Google for subscriber information related to iloveXXXX@gmail.com. Google subscriber information revealed the name "Zay" was associated with the account. Furthermore, a review of the Google subscriber IP addresses revealed the IP addresses returned to the Washington D.C and Maryland region from December of 2024 to March of 2025. It is reasonable to conclude that the name "Zay" is a nickname for "ISAIAH." Moreover, the Defendant's phone indicates that the Gmail iloveXXXX@gmail.com was operated by the user of the Defendant's phone.

a person using the display name "Dawn."  During the conversation, the Defendant and Dawn appeared to be bragging about what they had done to girls on-line.  Dawn said, "I made a bitch hang herself."  The defendant said, "I've made a girl catch herself on fire," and then he said, "Ima rape this e whore in Florida."  On the same day, while communicating on another social media platform using the username "cuturbody," the Defendant said to user "eswatts," "Ima rape the bitch irl.  I'm moving.  The bitch pissing me off. Ima move close to where she is and she doesn't know lol."

7.    An administrative subpoena was sent to Google for subscriber information related to stXXXX@gmail.com. Information provided by Google in response to the subpoena indicated that a phone number ending in 9843 was associated with this account as well as several IP addresses, which resolved to Boca Raton, Florida. A law enforcement database found a name for an individual (hereinafter W-1) associated with the phone number ending in 9843.

8.    FBI and local law enforcement in the Boca Raton area located W-1. W-1 confirmed that his 14-year-old daughter's name is MV-1 W-1 confirmed that his daughter goes by the nickname "LXXX" (the same nickname the Defendant provided during his interview). W-1 also confirmed that MV-1 was the user of the Gmail account stXXXX@gmail.com and the phone number ending in 9843. Based on a review of the above-referenced video and known images depicting MV-1, it appears that MV-1 is the individual depicted in the above-referenced video. MV-1 is currently a 14-year-old minor child.

9.    Law enforcement also contacted W-2 (who is the mother of MV-1) and W-1 and W-2 gave consent for FBI to seize and examine MV-1's phone and computer.  W-1 and W-2 gave passwords to the phone and computer to the FBI. The review of these devices by the FBI is on-going.

10.    Following the March 19, 2025, search warrant execution, law enforcement agents interviewed the Defendant's parents, who indicated that the Defendant resided with them in Washington, D.C on the Washington Navy Yard Base. Records show that the Defendant was

4

regularly accessing the base since November of 2024.

**Parallel Investigation involving the Defendant**

11.    In June 2024, the FBI's Indianapolis Field Office received two reports from the National Center for Missing and Exploited Children ("NCMEC"), describing Discord accounts engaged in possible CSAM and other illegal activity.  The investigation revealed that the Defendant's Discord account was referenced in both reports.

12.    The first report noted that on June 25, 2024, NCMEC received information from Discord about an account with an image believed to depict CSAM.  NCMEC reported the following:

> This file appears to depict an unclothed leg and arm of what appears to be a pubescent individual. The individual appears to have written 'Kills 764' on their unclothed leg and on the wall behind them in a red, liquid substance consistent with blood. The individual appears to have written 'Kills owns me' on their unclothed arm in a red, liquid substance consistent with blood.

13.    Discord included the image in question, which was a collage of six different images as described above.  Discord also provided NCMEC with the account holder's user information, including the username "xalloxs," email address isaiah.z.hall@gmail.com, and associated IP address 75.140.154.220.

14.    The second NCMEC report indicated that on June 26, 2024, NCMEC received information from Discord about several accounts associated with the potential extortion of minor victims.  NCMEC reported the following: "Based on the reported chat logs dated 24 May 2024 - 22 June 2024, the reported users appear to discuss blackmailing various minors to self-harm, engage in bestiality, kill animals, and/or produce CSAM."

15.    Discord provided NCMEC with the chat logs, but did not include the attachments users sent contemporaneously with the chats. Based on the content of the chats, provided below, it appears that the attachments included images or videos containing CSAM, animal abuse, and/or evidence of self-harm.  Discord also provided account information for the six users involved in the

chats, including accounts with username "xalloxs" and username "extortkids." The user of the "xalloxs" account had an email address isaiah.z.hall@gmail.com, IP address: 75.140.154.220, and phone number: (443) 714-4130 ("Phone Number 4130").

16.    Phone Number 4130 was referenced in a report of a single car traffic accident filed with the Anne Arundel County (Maryland) Police Department on June 12, 2023. The report indicated that the driver was Isaiah Zachariah Hall, with a Maryland driver's license, and an address in Arnold, Maryland. The police report stated that the vehicle, a Jeep SUV with Michigan plates, was registered to J.H. at the same Arnold, Maryland address.

17.    Pursuant to legal process, Charter Communications, Inc. provided subscriber information for the IP address associated with the "xalloxs" Discord account, 75.140.154.220. This IP address accounted for 1,594 of the 2,888 logins to the "xalloxs" Discord account, occurring between March 04, 2024, and May 22, 2024.[4] The service provider records showed the IP address's account was subscribed to an individual with a service address in Hollister, California. The listed IP address showed it was registered to the account from August 15, 2023, through February 21, 2025.

18.    In January 2025, law enforcement interviewed the subscriber ("W-3") and learned she was the biological mother of a son named Isaiah Zachariah Hall. She said that she allowed Isaiah Zachariah Hall to live with her in Hollister, California, for approximately seven to eight months in 2024, but eventually sent him to a faith-based program on the East Coast due to behavior issues. She reported that he left the program after one month and returned to live with his adoptive parents, in Washington, D.C. W-3 confirmed that Phone Number 4130 was Defendant's phone number.

---

[4]    Most of the other 18 Internet Service Providers related to the IP addresses utilized to access the "xalloxs" Discord account resolved to hosting companies that are likely related to VPN services. Approximately 29% of the IP addresses that accessed the account resolved to T-Mobile, which does not provide customer data for IPv4 addresses. Approximately 12% of the IP addresses that accessed the account resolved to Verizon. Investigators are awaiting records on those IP addresses.

Accordingly, based on information from Discord, NCMEC, the Ann Arundel Police report, and W-3, "xalloxs" is believed to be Isaiah Zachariah Hall, the Defendant.

19.    Law enforcement reviewed the chat logs provided by Discord to NCMEC.  Below are summaries of the chats.[5]  Relevant excerpts of the actual chat logs follow each summary.

20.    On May 26, 2024, the Defendant requested to "rep" [represent] the "crew name" owned by KILLS.  The Defendant also requested KILLS teach him how to extort individuals to commit acts such as cutting.  The Defendant suggested he deserved to be a part of KILLS' crew because the Defendant had brought a female ("Unknown Victim 1") to KILLS to perform acts on camera, including sexually explicit conduct with an animal, cutting, and drinking soap.[6]  The Defendant stated Unknown Victim 1 was prepared to drink bleach as well but did not have any available.  He said Unknown Victim 1 conducted these acts out of fear and stated on camera that KILLS owned her.  At one point in the chat, KILLS called the Defendant by the name "Isaiah".  KILLS then warned the Defendant to stop extorting Unknown Victim 1 because she had the SUBJECT's phone number and that could be used to trace the Defendant to his real identity.

21.    Seven excerpts from the chat are provided below.  Chat content is italicized but otherwise presented as it appears in the logs.[7]  Times are in UTC (Coordinated Universal Time).  All references to a female appear to be about Unknown Victim 1.

| Date and Time | User | Chat Content |
|---|---|---|
| 5/26/2024 0:13 | Defendant | *can i rep* [represent] *your crew name?* |
| 5/26/2024 0:13 | Defendant | *since i made this shit happen or no?* |
| 5/26/2024 0:15 | Defendant | *turn cam* [webcam] *on* |
| 5/26/2024 0:15 | Defendant | *tell her to turn cam* [webcam]  *on* |

---

[5]    The chats are replete with abbreviations, acronyms, and text slang.  When possible, abbreviations, acronyms, and slang will be followed by bracketed definitions that are based on my training, experience, and knowledge of this case.

[6]    At this time, Unknown Victim 1 has not been identified.

[7]    All references to links to the attachments were changed to [UNKNOWN ATTACHMENT] because Discord did not provide attachments.  Some terms are defined by bracketed definitions, based on my training, experience, and knowledge of this investigation.

| 5/26/2024 0:34 | Defendant | *yea bro if u down id like to run with you in these shits teach me and shit* |
|---|---|---|
| 5/26/2024 0:34 | KILLS | *ok* |
| 5/26/2024 0:35 | Defendant | *i got girls bro ill get girls to warm up to me and than give u there numbers* |
| 5/26/2024 0:36 | KILLS | *okay* |
| | | |
| 5/26/2024 4:56 | Defendant | *this her saying we own her fyi* |
| 5/26/2024 5:15 | Defendant | *this her  saying kills owns me* |
| 5/26/2024 7:18 | Defendant | *can i join your crew????* |
| 5/26/2024 7:21 | Defendant | [UNKNOWN ATTACHMENT] |
| 5/26/2024 7:21 | Defendant | *shes sucking her dogs dick* |
| 5/26/2024 7:23 | Defendant | [UNKNOWN ATTACHMENT] |
| 5/26/2024 7:23 | Defendant | *she cut on her tits too* |
| 5/26/2024 8:23 | Defendant | [UNKNOWN ATTACHMENT] |
| 5/26/2024 8:23 | Defendant | *i made her drink soap* |
| 5/26/2024 8:23 | Defendant | *so can i rep FSK?* |
| | | |
| 5/26/2024 16:50 | KILLS | *DONT FUCKING DO THIS SHI* |
| 5/26/2024 16:50 | KILLS | *WITHOUT* |
| 5/26/2024 16:50 | KILLS | *ME* |
| 5/26/2024 16:50 | KILLS | *BRO* |
| 5/26/2024 16:50 | KILLS | *UR* |
| 5/26/2024 16:50 | KILLS | *SO* |
| 5/26/2024 16:50 | KILLS | *DUMB* |
| 5/26/2024 16:50 | KILLS | *U DIDNT EVEN EXTORT HER* |
| 5/26/2024 16:50 | KILLS | *U JS MADE HER STRIP NAKED* |
| 5/26/2024 16:50 | KILLS | *NIGGA* |
| 5/26/2024 16:50 | KILLS | *THAS NOTHING* |
| 5/26/2024 16:50 | Defendant | *Bro ik* [I know] *i had my OBS* [screen recording software] |
| 5/26/2024 16:51 | Defendant | *While i was afk* [away from keyboard] |
| 5/26/2024 16:51 | Defendant | *I just edited that shit out* |
| | | |
| 5/26/2024 16:52 | Defendant | *She was gonna drink bleach but she didnâ€™t* [didn't] *have any* |
| 5/26/2024 16:52 | Defendant | *no she fucking didnt* |
| 5/26/2024 16:52 | Defendant | *you made her do this shi* |
| 5/26/2024 16:52 | Defendant | *this is why i dont extort with you nigga* |
| 5/26/2024 16:52 | Defendant | *u do stupid fucking shi* |
| 5/26/2024 16:52 | Defendant | *without me* |
| | | |
| 5/26/2024 16:52 | KILLS | *ur always worried about getting them naked bro* |
| 5/26/2024 16:53 | Defendant | *She  wasnâ€™t* [wasn't] *gonna listen you you* |

| 5/26/2024 16:53 | Defendant | *She told me she donâ€™t [don't] care anymore* |
| 5/26/2024 16:53 | KILLS | *yes she  was* |
| 5/26/2024 16:53 | Defendant | *I gtg [good to go] bro* |
| 5/26/2024 16:53 | Defendant | *Sheâ€™s [she's] still gonna do shit* |
| 5/26/2024 16:53 | KILLS | *CAUSE* |
| 5/26/2024 16:53 | KILLS | *YOUR* |
| 5/26/2024 16:53 | Defendant | *Sheâ€™s [she's] scared asf [as fuck]* |
| 5/26/2024 16:53 | Defendant | *FUCKING* |
| 5/26/2024 16:53 | Defendant | *HARMLESS* |
| 5/26/2024 16:53 | Defendant | *SHES NOT GONNA DO SHI FOR YOU* |
| 5/26/2024 16:53 | Defendant | *UNLESS YOU THREATEN HER WITH ME* |
| | | |
| 5/26/2024 19:32 | Defendant | *why people calling me a pedo* |
| 5/26/2024 19:33 | KILLS | *cs [cause] u made a 12 yr take her clothes off* |
| | | |
| 5/26/2024 19:34 | Defendant | *ts u smart* |
| 5/26/2024 19:34 | KILLS | *nigga wtv [whatever]* |
| 5/26/2024 19:34 | Defendant | *cant even hold u* |
| 5/26/2024 19:34 | KILLS | *LOL [laugh out loud]* |
| 5/26/2024 19:34 | KILLS | *nigga ok wtv [whatever] bro* |
| 5/26/2024 19:34 | KILLS | *i def [definitely] played you* |
| 5/26/2024 21:56 | KILLS | *isaiah* |
| 5/26/2024 21:56 | KILLS | *when i say stop* |
| 5/26/2024 21:56 | KILLS | *stop* |
| 5/26/2024 21:56 | KILLS | *no more fw [fucking with] her* |
| 5/26/2024 21:57 | KILLS | *she has ur number* |
| 5/26/2024 21:57 | KILLS | *she snitches* |
| 5/26/2024 21:57 | KILLS | *they trace back to you* |
| 5/26/2024 21:57 | KILLS | *and you made her do shi* |
| 5/26/2024 21:57 | KILLS | *like suck her dog* |
| 5/26/2024 21:57 | KILLS | *and get naked* |
| 5/26/2024 21:57 | KILLS | *and finger herself* |
| 5/26/2024 21:57 | KILLS | *and made her cut her tits* |
| 5/26/2024 21:57 | KILLS | *ur gonna be fucked if u keep doing it* |
| 5/26/2024 22:00 | Defendant | *Ight [alright] bro i hear u* |
| 5/26/2024 22:00 | KILLS | *alr [alright] im looking out for you* |
| 5/26/2024 22:00 | Defendant | *Nah bruh i appreciate u* |

22.     Between May 30, 2024, and May 31, 2024, the following chat took place between the Defendant and KILLS.  In summary, the Defendant discussed a female victim who was being

9

requested to cut for "daddy kills".[8]  The Defendant again requested KILLS to help him with extorting and doxing victims.  The Defendant said that he was saving videos and screenshots for KILLS, presumably related to extortion victims, in case KILLS' account gets banned.[9]  The Defendant again requested to join KILLS' group named "FSK".  KILLS expressed he closed the "FSK" group because it was going to ruin his "rep" [reputation] and he was now a part of a new group named "502" that was created by "tears"[10].  The Defendant again requested KILLS teach him and KILLS replied that he has been willing to teach the Defendant.

23.    Five excerpts from the chat are provided below.  Times are in UTC (Coordinated Universal Time).

| Date and Time | User | Chat Content |
|---|---|---|
| 5/30/2024 5:49 | Defendant | *yo kills u wanted me to text u this so "*[female name] *can u cut for daddy kills"* |
| 5/30/2024 5:49 | Defendant | [female name] *can u cut for daddy kills* |
| 5/30/2024 6:23 | KILLS | *didnt i get mad at you for making her get nakes* |
| 5/30/2024 6:23 | KILLS | *naked* |
| 5/30/2024 6:30 | Defendant | *who?* |
| 5/30/2024 6:31 | Defendant | *ohh yuh* |
| | | |
| 5/30/2024 10:11 | Defendant | *want me to save yo vids [videos] in case u lost them again?* |
| 5/30/2024 10:11 | KILLS | *YES* |
| 5/30/2024 10:12 | Defendant | *ight [alright] i did* |
| | | |
| 5/31/2024 0:02 | Defendant | [UNKNOWN ATTACHMENT] |
| 5/31/2024 0:03 | Defendant | [UNKNOWN ATTACHMENT] |
| | | |
| 5/31/2024 8:11 | Defendant | *hey kills ðŸ™,* |
| 5/31/2024 8:11 | Defendant | *any new videos or SS* [screen shots] *u need me to save?* |
| 5/31/2024 8:12 | Defendant | *incase u get banned on that account* |
| 5/31/2024 8:12 | KILLS | *nah not rn* [right now] |
| | | |

---

8    It is unclear whether this is Unknown Victim 1 or another female victim.

9    Discord will ban accounts that violate the Discord terms of service, which includes accounts used for criminal conduct such as the transmission of CSAM.  This is a regular occurrence for individuals involved with 764-type activity.

10    "Tears" is a common moniker utilized by another subject of this investigation.

| 5/31/2024 8:14 | KILLS | *thas are roster rn* [right now] *for 502* |
| 5/31/2024 8:14 | Defendant | *what do i gotta do to join FSK n shit* |
| 5/31/2024 8:14 | KILLS | *i closed fsk* |
| 5/31/2024 8:14 | Defendant | *fr?* [for real] |
| 5/31/2024 8:14 | KILLS | *its clowned and it will ruin my rep* |
| 5/31/2024 8:14 | Defendant | *whats 502?* |
| 5/31/2024 8:14 | KILLS | *my new group im running* |
| | | |

24.     During the FBI Indianapolis Field Office investigation, FBI agents and Greenwood (Indiana) Police Department detectives served an Indiana state search warrant on an associated individual's residence, seizing multiple electronic devices that had been utilized by that subject. Two video files were located on a laptop depicting a screen recording of a live video stream wherein Discord users including the Defendant (using the display name "Allo"[11]), extorted a minor female ("Minor Victim 2"). As described further below, this victim was identified by law enforcement and is a minor residing in the Sacramento, California area.

25.     Law enforcement reviewed the two video files related to Minor Victim 2. Multiple voices in the Discord video call with Minor Victim 2 threatened to swat her residence if she did not expose her breasts on camera. Minor Victim 2 repeatedly stated that she did not want to expose herself. She can be heard and seen crying in the video. The voices threatened to kidnap Minor Victim 2 and "sell" her if she did not comply. They also threatened to affect her parents' jobs and make her homeless. After approximately nine minutes, Minor Victim 2 complied and exposed her breasts on camera. Minor Victim 2 was asked her age while her breasts were exposed, and she responded that she was 14 years old. The voices instructed Minor Victim 2 to pinch her nipple and she complied. Minor Victim 2 was instructed to take off her pants. Minor Victim 2 can be heard

---

[11]     Based on Discord records produced pursuant to legal process, "Allo" was used by the Defendant appears to be a modification of the display name "xalloxs," but with the "x" and "xs" removed.

and seen crying again.  She refused to comply.  In a Discord chat screen, one user stated, "swat her anyway."  Minor Victim 2 then disconnected from the Discord call and live video stream.  The video file ended shortly after.

26.    A search warrant return for the Defendant's Discord account included two videos that appear to be screen recordings of the same extortion video call with Minor Victim 2.  One of the Defendant's videos included a short segment not previously viewed in the Indiana Subject's videos.  In this video segment, Minor Victim 2 had yet to expose her breasts.  The voices on the video call instructed her to remove her top and when she refused one of the voices stated, "So you wanna cut yourself instead."  The video clip ended shortly after that statement.

### Applicable Legal Standard

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," the Court shall order the defendant held pending trial.  18 U.S.C. § 3142(e).  "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'"  *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).  As a threshold matter, the government must demonstrate by a preponderance of the evidence that a defendant is a flight risk, *see United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996)), and by clear and convincing evidence that he is a danger to the community, *see* 18 U.S.C. § 3142(f).  The government argues herein that the Defendant poses both a risk of flight and a danger to the community.

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the

nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).

Here, because Receipt of Child Pornography is a crime of violence involving a minor victim, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3142(e)(3)(E).  This presumption "operate[s] at a minimum

13

to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"). But even if the defense produces credible evidence, the presumption retains evidentiary weight and is considered by the Court among the Section 3142(g) factors. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' . . . The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence.").

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See*

14

*Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

## Argument

For the reasons that follow, the United States submits that there are no conditions of release that will reasonably assure that the Defendant will not flee or pose a risk to the safety of any other person and the community.

### A. Nature and Circumstances of the Charged Offense

The Defendant's alleged conduct in this case is extremely harmful and dangerous to the community, as it involves the targeting and sexual exploitation of a vulnerable minor victim. This factor weighs heavily in favor of detention. "Child pornography depicts pictorial evidence of physical sex abuse against, and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, C.J.) (reversing magistrate court's release order); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 (D.D.C. Oct. 15, 2018) (Howell, C.J.(same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same). Children captured in images and videos depicting their sexual abuse are significantly harmed at the time that the images and videos are created, and they are re-victimized and re-traumatized every time an individual, such as the Defendant, views and shares these images for his own sexual gratification and for the sexual gratification of others. *See Galarza*, 2019 WL 2028710, at *6 (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at vii); *Nickelson*, 2018 WL 4964506, at *4 (same); *Blanchard*, 2018 WL4964505, at *4 (same).

The Defendant's conduct in this case was more serious than the typical case involving the receipt of child pornography. While the typical case involves scenarios in which an offender receives CSAM images produced by others, in his case, the evidence suggests that the Defendant's conduct went beyond merely receiving the video, but also involved repeated, direct communication with the victim and potentially the production of the CSAM.  As described above, the evidence shows that the Defendant not only received a CSAM video depicting the minor victim, but he also engaged in repeated on-line communications with the victim, including live video chats, which suggest that he may have been speaking with the victim at the time that she produced the CSAM video, and may have in fact been responsible for the production of the video as well.  Although there is no sound recorded on the video that was found on the Defendant's phone, it is clear that the victim is speaking while she is engaged in the sexual conduct depicted in the video.

The seriousness of the offense of the charged offense is also reflected by Congress's judgment that those charged with receiving child pornography should be presumed detained pending trial, *see* 18 U.S.C.§ 3142(e)(3)(E) and are subject to a five-year mandatory minimum term of imprisonment upon conviction, *see* 18 U.S.C. § 2252(b)(1). Accordingly, the nature and circumstances of the Defendant's offense weigh heavily in favor of detention.

### B.  The Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also weighs heavily in favor of detention.  The evidence against the Defendant is strong.  As detailed above, the Defendant received child pornography from a minor child on his phone and he was in direct and repeated communications with the same minor child who is depicted in the CSAM video, around the time that the video was produced.  In addition, the Defendant admitted during his voluntary interview with law enforcement on March 19, 2025, that he knew the girl depicted in the CSAM video and that he had received the video from her.  However, he lied to law enforcement about her age,

revealing a consciousness of guilt and an attempt to minimize the harmfulness of his conduct.

While some judges in this Court have indicated that this factor should be given less weight, in *United States Blackson*, following a thorough review of the text of Section 3142 and decisions analyzing this factor, then–Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023) (Howell, C.J.). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed then–Chief Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149–150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the Defendant should be detained pending trial.

## C. The History and Characteristics of the Defendant

Although the Defendant has no known criminal history, his conduct was serious and reflects a determined interest in the sexual exploitation of minors. The Defendant not only targeted and communicated with a vulnerable minor victim on-line and received child pornography produced by this child, be he also engaged in explicit conversations with others on Discord, in which he discussed the sexual exploitation and extortion of other vulnerable minor victims, and he appears to have also

17

participated in attempts to extort minors on-line to cut themselves and engage in self-harm.

In addition, the Defendant is unemployed and was living in a residential treatment center for internet addiction at the time that he was arrested in this case.  He has no apparent ties to the District of Columbia, and his parents, within whom he was residing prior to his placement in the treatment center, now live in Florida.  The Defendant's lack of employment and ties to the District of Columbia suggest that the Defendant would present a risk of flight.  The Defendant's apparent internet addiction would undercut any argument that the defense might raise about the ability of any third-party custodian to adequately ensure that the Defendant is prevented from accessing the internet where he can continue to exploit vulnerable minors.

This factor also weighs in favor of detention.

## D.      The Nature and Seriousness of the Danger to any Person or the Community

The facts and evidence in this case establish that the Defendant poses a grave danger to the community.  As discussed above, the receipt of child pornography results in severe mental, emotional, and physical trauma to the children who are victimized by offenders such as the defendant, who seek to achieve sexual gratification through viewing and sharing of images depicting the sexual abuse of children.  The Defendant, as a consumer and trafficker of child pornography, furthers the demand for new material depicting the graphic sexual exploitation and

sexual abuse of vulnerable children. It is precisely "[t]hese significant harms and dangers [that] animated the Congress to create the statutory presumption of detention in these cases." *Galarza*, 2019 WL 2028710, at *7; *Nickelson*, 2018 WL 4964506, at *5 (noting also Congress's creation of significant statutory mandatory minimum penalties); *Blanchard*, 2018 WL 4964505, at *4 (same). The totality of his conduct demonstrates that he poses an unmitigable danger to the community. There is no condition or combination of conditions that could reasonably assure community safety were the Defendant to be released. This Court should order that he remain detained pending trial.

## Conclusion

For the foregoing reasons, the government respectfully requests that this Court order that Defendant Isaiah Hall remain detained pending trial.

Respectfully submitted,

Edward R. Martin, Jr.
Interim United States Attorney

Dated: April 14, 2025          By:      /s/ *Karen Shinskie*
Karen L. Shinskie
D.C. Bar No. 1023004
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 730-6878
karen.shinskie@usdoj.gov